UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                 :

THOMAS A. BRAILSFORD, III,           :
                        Plaintiff,   :
                                 :

           -against-        :
                                 :

ZARA USA, INC.,                 :
                     Defendant.   :
                                 :
------------------------------------------------------------ X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _02/16/2016_

14 Civ. 6999 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Thomas A. Brailsford, III brings this action against his former employer,

Defendant Zara USA, Inc. ("Zara").  Zara moves for summary judgment on Plaintiff's claims

that survived Defendant's motion to dismiss -- discrimination on the basis of race and/or

ethnicity in violation of 42 U.S.C. § 1981 ("Section 1981"), and discrimination on the basis of

race, color and/or national origin under Title VII of the Civil Rights Act ("Title VII").  For the

reasons discussed below, Zara's motion is granted.

## I.    BACKGROUND

### A.  Facts

      The following facts are drawn from the parties' submissions in connection with the

instant motions.[1]  For purposes of this motion the facts are construed, as required, in the manner

---

[1] Plaintiff is represented by counsel and is not pro se.  Plaintiff opposed the motion by filing a
document at Docket No. 76 that purported to be a memorandum of law in opposition to
Defendant's motion for summary judgment, but aside from the cover page, was the entirety
of Defendant's memorandum of law at Docket No. 67, copied and pasted, with no new writing from
Plaintiff.  At the same time, Plaintiff filed two declarations from Plaintiff's counsel, and an
affidavit from Plaintiff.  One of counsel's declarations stated that he could not present facts
essential to justify its opposition because of the lack of discovery, and attached a May 4, 2015
letter seeking to compel further discovery.  The May 4 request had been denied as untimely on
May 11, 2015, as it had been submitted after the close of fact discovery.

most favorable to Plaintiff, the non-moving party.  *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

Zara is a company that owns and operates retail stores.  Plaintiff is an African-American, non-Spanish speaker.  In March 2010, he began working for Zara as a part-time Stock Associate at their store on 59th Street and Lexington Avenue.  Almost two years later, in February 2012, he was promoted to full-time Stockroom Supervisor.  As Stockroom Supervisor, Plaintiff's duties included receiving shipments, organizing the stockroom, organizing clothing/merchandise for display or storage, managing stock associates and other subordinate employees, handling transfers, and preparing for sales.

Plaintiff's discrimination claims arise out of his employment at Zara's Soho store, where he began working in August 2013, under the supervision of Vanessa Porras, Stockroom Manager, and Sonia Fontan, the store's General Manager.  Plaintiff was one of three Stockroom Supervisors at the Soho store; the other two, Angel Medina and Teymi Rodriguez, were both Hispanic.

Plaintiff alleges that while he worked at the Soho store, his supervisor Porras discriminated against him in favor of employees who were non-African American and of Hispanic descent.  Plaintiff alleges that she took the following adverse employment actions against him:  (1) conducted meetings exclusively in Spanish, so that Plaintiff could not

---

By Order on July 9, 2015, Defendant's Local Rule 56.1 statement was deemed admitted because Plaintiff had not filed any response to it by the filing deadline of July 8, 2015.  Plaintiff then submitted an untimely response on July 9, 2015.  In light of the Second Circuit's preference for a district court to decide a case on the merits when possible, Plaintiff's 56.1 statement is considered.  *See, e.g., Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 235 (2d Cir. 2004) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [ ] mere technicalities.") (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

participate; (2) excluded Plaintiff from obligatory meetings by assigning him menial tasks during the meetings; (3) had a sales associate, Wendy Zambrano, give Plaintiff directions instead of Porras herself; (4) assigned Plaintiff duties that alienated him from his co-workers and subordinates, such as sending him "to the back to condense clothes alone" or to "the basement to start back-stocking clothes"; (5) assigned Plaintiff less favorable tasks and shifts with less assistance than Medina and Rodriguez, telling Plaintiff to "transfer out" boxes alone when the task required two people and leaving him to finish the work of his Hispanic counterparts; (6) disproportionately disciplined and criticized Plaintiff compared to Medina and Rodriguez; and (7) falsely accused Plaintiff in their one-on-one conversations, but not in any formal reports, of having performance deficiencies, specifically his leadership and organizational skills and how he processed shipments.  Further, Porras told Plaintiff, "I feel you're not a supervisor level" and "[you] always leave the stockroom a mess."

Plaintiff alleges that Zara employees made the following discriminatory comments:  (1) Zambrano said, "Zara is a Spanish-owned company so you should learn Spanish," and (2) Rodriguez once jokingly referred to Plaintiff as an "800" which is the stockroom color code for "black."  Plaintiff also alleges that Porras, Rodriguez, and Medina regularly used Spanish to communicate with each other during work hours, knowing that Plaintiff does not understand Spanish.

Plaintiff complained to Fontan in late September 2013 about Porras's, Medina's, and Rodriguez's use of Spanish, tension between Porras and Plaintiff regarding the organization of the stock room and Plaintiff's feeling that felt Porras did not like him.  Plaintiff also texted with his previous general manager from another store about these concerns.

3

Fontan had a conversation with Porras and his other co-workers explaining how Plaintiff felt.  Following Fontan's conversation with Porras, Plaintiff alleges that Porras's behavior towards him "got worse" -- he was assigned more tasks; he was left to work with less staff; and he was blamed for a mess his co-workers had left.

In addition to speaking with Porras, Fontan also contacted the human resources regional manager, Tania Gardner, and told her that Plaintiff was uncomfortable in the Soho store and would prefer another location.  Gardner planned to come to the Soho store to speak to Plaintiff but missed their meeting, scheduled for Tuesday, October 1, 2013, because of other work.  She spoke to him on the store phone and told him that she would come by to see him the following week.  That meeting never occurred because the following week Zara determined that Plaintiff had voluntarily resigned.

When Plaintiff arrived at work on Monday, October 7, 2013, at around 5:00 a.m., Porras yelled at him for about 10 minutes because two shipping boxes had not been fully processed over the weekend.  According to Plaintiff, when he had left work the previous Friday afternoon, he told Medina that he had processed most of the shipment and that Medina should process the two remaining boxes.  When Plaintiff arrived on Monday morning, the two boxes had not been processed.  Porras began yelling at Plaintiff, called him "lazy" and accused him of not doing his job, even though Medina was standing right next to him.  Plaintiff walked out while she was yelling and cursing at him.  Plaintiff testified that he could not "take it anymore" or "be around them anymore" because the environment was "hostile"; that he had tried to do his job but was screamed at for something his colleagues failed to do; and that he had tried to reach out for help to human resources but had not received it.

4

The next morning, Gardner called Plaintiff and informed him that his departure the previous day constituted job abandonment, which Zara considered a voluntary resignation. Plaintiff was replaced as stock supervisor by Tariq Hudson, who is African American and does not speak Spanish.

## II.    DISCUSSION

### A.  Summary Judgment Legal Standard

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Tolbert*, 790 F.3d at 434.  "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  "In determining whether summary judgment is appropriate, [the court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert*, 790 F.3d at 427.  Not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Discrimination

Defendant's motion for summary judgment on Plaintiff's Title VII and Section 1981 claims is granted because Plaintiff cannot make out a prima facie case of discrimination.

### 1.  Legal Standard

Discrimination claims under § 1981 and Title VII are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Ya-*

*Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73-74 (2d Cir. 2015); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015).  In an employment discrimination case, a plaintiff has the burden at the outset to prove "by the preponderance of the evidence a prima facie case of discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To meet this burden, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  *Vega*, 801 F.3d at 83.

"Once a plaintiff has established a *prima facie* case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors."  *Id.* (citing *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253-54).  "The burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

### 2.   Member of a Protected Class & Qualified for His Position

Plaintiff is a member of a protected class as an African American, but not as a non-Spanish speaker.  Plaintiff alleges that he was discriminated against because he does not speak Spanish.  However, "[l]anguage, by itself, does not identify members of a suspect class."  *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (denying Plaintiffs' claim that the Secretary of Health and Human Services' failure to provide forms and services in the Spanish language constituted Title VII discrimination because while "Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis," language on its own does not); *accord Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009)

6

("[M]any courts, including the Second Circuit, have recognized that Title VII does not expressly identify language as a protected class.") (collecting cases).

Plaintiff is African American, and alleges in the Amended Complaint that he was discriminated against because of his race and ethnicity.  Race is a protected class under Title VII. *See* 42 U.S.C. §§ 2000e et. seq.  Plaintiff, as an African-American, satisfies the first prong of a prima facie case of discrimination.  This means, however, that he must show that any discriminatory treatment was on account of his race, and not some other reason, including his inability to speak Spanish.

Because Plaintiff was a stockroom supervisor for more than a year and a half, having been promoted from stockroom associate, a reasonable inference can be drawn that he was qualified for his position.  Plaintiff therefore satisfies the second prong of a prima facie case of discrimination.

### 3.  Adverse Employment Action

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'  It must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  While there is "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination," *Davis*, 804 F.3d at 235, "[e]xamples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders*, 361 F.3d at 755 (internal quotation

7

marks and citation omitted) (last alteration in original).

Here, Plaintiff did not experience any qualifying adverse employment actions.  In his 56.1 statement, he lists as adverse employment actions that his manager (1) conducted meetings exclusively in Spanish; (2) excluded him from obligatory meetings by assigning him menial tasks during the meetings; (3) had a sales associate give him directions instead of the manager herself; (4) assigned Plaintiff duties that alienated him from his co-workers and subordinates; (5) assigned Plaintiff less favorable tasks and shifts, with less assistance, than his colleagues, and that he was left to finish the work of his Hispanic counterparts; (6) disproportionately disciplined and criticized Plaintiff compared to Medina and Rodriguez; and (7) falsely verbally accused Plaintiff of having performance deficiencies, specifically that his leadership and organization skills were deficient and that he did not process shipments correctly.  While these actions by Porras might be considered exclusionary and rude, none of them resulted in a materially adverse change with respect to Plaintiff's terms or conditions of employment.  *See Sanders*, 361 F.3d at 755; *see also Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404-07 (S.D.N.Y. 2014) (holding that the employee's allegations that the defendants, among other things, gave her undesirable assignments and shifts and wrote her up on false charges of sleeping at work did not rise to the level of an adverse employment action); *Self v. Dep't of Educ. of the City of N.Y.*, 844 F. Supp. 2d 428, 435 (S.D.N.Y. 2012) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."); *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 154 (S.D.N.Y. 2011) (holding that employee's alleged adverse employment actions, which included her supervisor taking away responsibilities, routinely excluding her from important decisions and conference calls, preventing her from attending senior management meetings, and refusing to meet with her face to face and generally being "divisive and hostile," did not rise to

8

the level of material adversity needed to survive summary judgment).

The only arguable adverse employment action -- one that Plaintiff did not assert -- is constructive discharge, and it also falls short.  Plaintiff testified that when he left the store, and in effect resigned, the environment was "hostile" and he could no longer tolerate his working conditions.  Constructive discharge occurs "when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.  Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).  A constructive discharge is "functionally the same as an actual termination" and therefore is considered an adverse employment action.  *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001) ("Adverse employment actions include discharge from employment.  Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge.")

Plaintiff's work environment was perhaps uncomfortable, but it was not "so difficult or unpleasant" that a reasonable person would have felt "compelled to resign."  Plaintiff asserts that he felt excluded by his colleagues and supervisor who spoke Spanish around him; that he was demeaned and singled out by his supervisor; and that two employees each made one derogatory comment to him.  These circumstances are insufficient to infer that a reasonable person would have felt *compelled* to resign.  *See, e.g.*, *Rasulo v. Hartnett*, 831 F. Supp. 2d 714, 720 (S.D.N.Y. 2011) (where the plaintiff claimed that the defendants wrongfully accused him of stealing from a drug dealer while on duty and as a result, he was labeled a "rat" and a "dirty cop," becoming a "pariah" within the Police Department, the court concluded that the plaintiff's "possibly tarnished

9

reputation and his uncomfortable work environment does not amount to constructive discharge"); *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 333 (S.D.N.Y. 2006) (holding that one of the plaintiffs, an African American woman, had failed to make out a prima facie case for constructive discharge where she alleged facts that her white supervisor treated white employees more favorably); *Bailey v. Synthes*, 295 F. Supp. 2d 344, 355 (S.D.N.Y. 2003) ("[A] constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of his work.") (quoting *Spence v. Md. Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)).

Even if Plaintiff could establish that his work conditions were so onerous as to amount to constructive discharge, he could not prove -- and the evidence does not support -- the fourth prong of a prima facie case, that the circumstances give rise to an inference of discrimination, i.e., that the conditions he found intolerable were a result of his race.  Plaintiff admitted as much when he testified that it was "hard to say [it was] because of my race" that he was discriminated against.  Plaintiff cites a single racial reference; a co-worker referred to Plaintiff as an "800" which is the stockroom color code for "black."  Nothing in the record ties this comment or any other racial animus to the treatment that caused Plaintiff to resign.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("In short, [in a Title VII case,] the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.").

Because Plaintiff cannot prove the third or fourth prong of a prima facie case of discrimination, his claim based on a theory of discriminatory conduct does not survive.

## C.  Hostile Work Environment

Defendant's motion for summary judgment is also granted on claims based on a theory of hostile work environment.  To defeat a motion for summary judgment on a claim of racially hostile work environment under § 1981 or Title VII, a plaintiff must demonstrate:  (1) that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," and (2) that there is "a specific basis . . . for imputing" the conduct creating the hostile work environment to the employer.  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723-24 (2d Cir. 2010) (§ 1981); *Tolbert*, 790 F.3d at 439 (Title VII) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

In considering whether a plaintiff has met this burden, courts examine the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's job performance.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal citations and quotation marks omitted).  The test has objective and subjective elements.  "[T]he misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the plaintiff must also subjectively perceive that environment to be abusive."  *Id.*  It is "axiomatic" that mistreatment at work is actionable under Title VII only when it occurs *because of* an employee's protected characteristic, such as race or national origin.  *Id.*

Here, Defendant's conduct does not rise to a level where the workplace can be considered to be "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [Plaintiff's] employment were thereby altered."

11

The bulk of Plaintiff's complaints amount to feeling excluded by his colleagues and demeaned by his supervisor because he did not speak Spanish.  Two employees made discriminatory comments to Plaintiff -- a sales associate told Plaintiff that "Zara is a Spanish-owned company so you should learn Spanish," and Plaintiff's co-supervisor once jokingly referred to Plaintiff as an "800" which is the stockroom color code for "black."  These two isolated comments are "stray" remarks and do not show that Defendant Zara was motivated by discrimination.  *See, e.g.*, *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.  For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); *Tolbert*, 790 F.3d at 437 (affirming *Tomassi*'s explanation of how a court should weigh stray remarks' discriminatory impact).  Plaintiff's workplace is not a hostile work environment under § 1981 or Title VII.

## III.    CONCLUSION

For the reasons discussed above, Zara's motion for summary judgment is GRANTED in its entirety.  The Clerk of Court is directed to close the motions at Docket No. 66 and close the case.

Dated: February 16, 2016
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

12